**United States District Court**
**Western District of Michigan**

**FILED - GR**
December 16, 2015 4:48 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY _mkc/ ___ ___ SCANNED BY

Andres Santiago/Pro Se
303 Maplelawn ST. SE
Kentwood, Michigan 49548
773-343-2639
V.

**1:15-cv-1301**

**Janet T. Neff**
**U.S. District Judge**

Grand Rapids Public Schools, (Officially)
Superintendent; Teresa Weatherall Neal (Officially and Individually)
Director of Human Resources And Labor Relations; Mickey Savage (Officially and Individually)
Principal of Southwest Community Campus; Carmen Fernandez (Officially and Individually)
Administrator; Mrs. Leslie Martinez (Officially and Individually)
1331 Franklin ST. SE.
Grand Rapids, Michigan 49506

**Title: Complaint And Demand For Jury Trial**

**NATURE OF THE CLAIMS**

1. This is an action for declaratory, injunctive and equitable relief, as well as monetary damages, to redress Defendant's unlawful employment practices, including Defendant's unlawful discrimination, harassment and retaliation against me, the Plaintiff because of my race/color, national origin and/or gender, because of my repeated effort to apply for administrative positions that were available, respectively in violation of Title VII of the Civil Rights Act of 1964, violation of the Elliot-Larsen Civil Rights Act of 1976; and violation of 14 Amendment of the United States Constitution Due Process and for breach of contract. Other Violations involve the Bullard-Plawecki Employee Right To Know Act, MCL 423.501, et seq (The Act); The Family and Medical Leave Act; and the Prompt Payment Act. I filed charges with the Michigan Employment Relations Commission against the Grand Public Schools and the Grand Rapids Education Association (Union) and the Equal Employment Opportunity Commission. I am submitting this complaint to the Federal Court before the deadline.

**Jurisdiction and Venue**

2. This Court has jurisdiction over this action pursuant to violation of Title VII of Civil Rights Act of 1964, violation of the Elliot-Larsen Civil Rights Act of 1976; and violation of 14 Amendment of the United States Constitution Due Process, as this action involves federal questions regarding the deprivation of Plaintiff's civil rights. Also, under Title VII, along with retaliation and harassment claims, the Court has jurisdiction over Plaintiff's more related claims arising under federal and state law. Venue is proper in this district because a substantial part of the events or omissions giving rise to these actions, including the unlawful employment practices, which occurred in this district.

**Parties**

3. My name is Andres Santiago, Plaintiff; my race is Hispanic, my national origin is Puerto Rican and my gender is male. From around August 26, 2014 until March 16, 2015, I have been employed with the Grand Rapids Public Schools as a Kindergarten Teacher. At all relevant times I was a Kindergarten Teacher, and I had in possession the Professional Educator and Administrative Certifications since 2010 from the State of Illinois and since 2013 from the State of Michigan. My home address is 303 Maplelawn ST. SE, Kentwood, Michigan 49548.

4. The Defendants involved are as follows: The Grand Rapids Public Schools, (Officially); Superintendent: Teresa Weatherall Neal (Officially and Individually); Director of Human Resources And Labor Relations: Mickey Savage (Officially and Individually); Principal of Southwest Community Campus: Carmen Fernandez (Officially and Individually); Administrator: Mrs. Leslie Martinez (Officially and Individually); Grand Rapids Public Schools is located at 1331 Franklin ST. SE. Grand Rapids, Michigan 49506. The school (Southwest Community Campus) of the District, where I worked is located at 801 Oakland SW, Grand Rapids, Michigan 49503. At all relevant times the defendants met the titles, respectively, either Employer, Superintendent, Director of Human Resources, Principal and/or Administrator.

**Violations of Title VII of the Civil Rights Act of 1964 and the Elliot-Larsen Civil Rights Act of 1976 on the basis of Race, National Origin and Gender. I will illustrate.**

5. A chronological set of events can be seen with dated documents. Documents tell a great part of why I filed charges against the Grand Rapids Public Schools (hereinafter GRPS). I started applying for administrative positions as early as 2013, whereby GRPS continuously stated in letters, "Your application was reviewed and based on the posted requirements for the position; you were not selected for the interview". GRPS stated via email on August 22, 2015, that if I accepted the Kindergarten position that I would be able to apply for administrative positions. Specifically, GRPS wrote, "When positions come open, you are welcomed to apply for any opening you feel you are qualified for." This letter was written on August 22, 2015 by GRPS. I continuously applied for open positions before and after that date, until the last application submitted for an opened Administrative position for Burton Middle School. Electronically, I requested consideration for that position on October 28, 2014, 9:33 PM. Then, on October 29, 2014, GRPS, through Principal Carmen Fernandez, retaliated by trying to tell me that GRPS lets her know when I apply. Principal Carmen Fernadez aslo said that I would have to quit before being considered for an Administrative and/or Principal position. There were many other retaliations that I reported on that day and on other days, as, well. Eventually, GRPS, through Principal Carmen Fernandez retaliated and put me on Administrative leave without telling me why on December 2, 2015, retaliated for the complaints that I made against GRPS, Principal Carmen Fernandez, White teachers, and Mrs. Leslie Martinez.

**GRPS Violated Title VII of the Civil Rights Act of 1964, as follows;**

6. **Count 1:** Discrimination on the basis of Hispanic was violated because an African American was hired for the Burton Middle School Principal position. I was not even interview,

2

even though I qualify with certifications for the position. Principal Carmen Fernandez and GRPS discouraged me on October 29, 2014, from continuing to apply even though the position was still open. I reported this harassment and documented it via email. GRPS has been historically hiring other African Americans as Principals/Administrators, like the Superintendent's daughters (Denishea Killingham and Natasha Neal), without even having Professional Education and/or Administrative Certifications. I have been applying for administrative positions as early as 2013. I got many letters stating "Your application was reviewed and based on the posted requirements for the position; you were not selected for the interview". Nonetheless, much later, another African American, Mrs. Lametria Johnson-Eaddy, was eventually hired as Principal, although Burton Middle School has a majority of Hispanics.

7. **Count 2:** Discrimination on the basis of national origin, Puerto Rican, was violated because an African American was hired for the Burton Middle School Principal position. I was not even interview, even though I qualify with certifications for the position. Principal Carmen Fernandez and GRPS discouraged me on October, 29 2014, from continuing to apply, even though the position was still open. I reported this harassment and documented it via email. GRPS has been historically hiring other African Americans, as Principals/Administrators, like the Superintendent's daughters (Denishea Killingham and Natasha Neal), without even having Professional Education and/or Administrative Certifications. I have been applying for administrative positions as early as 2013. I got many letters stating "Your application was reviewed and based on the posted requirements for the position; you were not selected for the interview." Nonetheless, much later, another African American, Mrs. Lametria Johnson-Eaddy, was eventually hired as Principal, although Burton Middle School has a majority of Hispanics and a large population of Puerto Ricans.

8. **Count 3:** Discrimination on the basis of Gender, because a female was hired for the Burton Middle School Principal position. I was not even interview, even though I qualify with certifications for the position. Principal Carmen Fernandez and GRPS discouraged me from continuing to apply on October 29, 2014, even though the position was still opened. I reported this harassment and documented it via email. GRPS has been hiring other Female African Americans, like the Superintendent's daughters (Denishea Killingham and Natasha Neal), as Principals/Administrators without even having a Professional Education and/or Administrative Certifications. I got many letters stating "Your application was reviewed and based on the posted requirements for the position; you were not selected for the interview". Nonetheless, much later, a female, Mrs. Lametria Johnson-Eaddy, was hired.

### GRPS Violated the Elliot-Larsen Civil Rights Act of 1976, as follows;

9. **Count 4:** Discrimination on the basis of Hispanic was violated because an African American was hired for the Burton Middle School Principal position. I was not even interview, even though I qualify with certifications for the position. GRPS and Principal Carmen Fernandez discouraged me from continuing to apply on October 29, 2014, even though the position was still opened. I reported this harassment and documented it via email. GRPS has been historically hiring other African Americans as Principals/Administrators, like the Superintendent's daughters (Denishea Killingham and Natasha Neal), without even having a Professional Education and/or

Administrative Certifications. I have been applying for administrative positions as early as 2013. I got many letters stating "Your application was reviewed and based on the posted requirements for the position; you were not selected for the interview." Nonetheless, much later, another African American, Mrs. Lametria Johnson-Eaddy, was eventually hired as Principal, although Burton Middle School has a majority of Hispanics.

**10. Count 5;** Discrimination on the basis of national origin, Puerto Rican, was violated because an African American was hired for the Burton Middle School Principal position. I was not even interview, even though I qualify with certifications for the position. GRPS and Principal Carmen Fernandez discouraged me from continuing to apply on October 29, 2014, even though the position was still opened. I reported this harassment and documented it via email. GRPS has been historically hiring other African Americans, as Principals/ Administrators, like the Superintendent's daughters (Denishea Killingham and Natasha Neal), without even having a Professional Education and/or Administrative Certifications. I have been applying for an administrative position as early as 2013. I got many letters stating "Your application was reviewed and based on the posted requirements for the position; you were not selected for the interview". Nonetheless, much later, another African American, Mrs. Lametria Johnson-Eaddy, was eventually hired for the Principal position, although Burton Middle School has a majority of Hispanics and a large population of Puerto Ricans.

**11. Count 6:** Discrimination on the basis of Gender, because a female was hired for the Burton Middle School Principal position. I was not even interview, even though I qualify with certifications for the position. A female, Principal Carmen Fernandez and GRPS discouraged me from continuing to apply on October 29, 2014, even though the position was still opened. I reported this harassment and documented it via email. GRPS has been hiring other Female African Americans, like the Superintendent's daughters (Denishea Killingham and Natasha Neal), as Principals/Administrators without even having a Professional Education and/or Administrative Certifications. I got many letters stating "Your application was reviewed and based on the posted requirements for the position; you were not selected for the interview". Nonetheless, much later, a female, Mrs. Lametria Johnson-Eaddy, was hired.

**Unlawful employment practices and retaliation against Plaintiff, under U.S. Code S 158 - Unfair Labor Practices and Title VII Retaliation Act**

**12. Count 7:** GRPS and Principal Carmen Fernandez harassed and retaliated against me because I was continuously applying for a principal position for GRPS. On October 29, 2014, the morning after submitting my application for consideration of open positions, Principal Carmen Fernandez, immediately, stated that "Every time you apply for a Principal position, they tell me about it." I mentioned to Principal Fernandez, what GRPS stated in August 22, 2014, via email about the freedom to apply for open positions. After speaking of many other concerns that I addressed on October 29, 2014, I become afraid to apply for any principal and/or administrative position, especially because of how uncomfortable Principal Carmen Fernandez made me feel, especially because GRPS told Principal Carmen Fernandez about my pursuit for a principal position.

**13.** As documented records show, I did not pursue any openings for a principal position, and it was because of the treatment given for applying. Documents show the last time that I tried for any open positions. GRPS stated to EEOC that, "you continue to apply for principal positions." The fact that I did not apply is obvious on records that reflect. Therefore, GRPS is inconsistent stating such a claim to EEOC as if I just kept on applying. I felt so intimidated, harassed, coerced and retaliated against that I did not apply anymore, and I did confront this harassment on October 29, 2015, the day that I became afraid to apply.

14. Ironically, in August of 2014, before I accepted the Kindergarten position, GRPS encouraged me to apply, whenever, for any openings. As evidence shows, the principal does articulate to EEOC that Principal Carmen Fernandez did speak to me on October 29, 2014, about GRPS not considering me for the position. What was stated by me, in fact, was confronted to Principal Fernandez, documented and submitted via email on October 29, 2014. I verbally addressed to Principal Fernandez and reported many instances happening at Southwest Community Campus. The following quotes are directly the document, written via email immediately after being harassed. Some of the specifics, encountered, from Principal Fernandez were many unjust subjects. The document has the following quotes.

15. "I was told that every time that I apply for an administrative and/or principal position, that it is reported to Mrs. Carmen Fernandez. Mrs. Fernandez mentioned that the Board will not consider hiring me because I already have a contracted position. However, one of the questions that I asked before being hired was that if I apply for an administrative position would it be possible to get hired throughout the GRPS system.".............. As reported above GRPS encouraged me August 22 2015, that I could apply for other positions, before being hired. Then GRPS harassed me and retaliated for continuously applying for an open Principal position that I qualify for, the day after my leave of absence following a three week Family and Medical Leave, under the Family and Medical Leave Act (FMLA).

16. On October 29, 2015, not only did I discussed these many matters with the principal, but also there were more discussions, that I documented and reported via email.

17. "Carmen suggested that I would have to stop working for them in order for the board to hire me as an administrator." ..... "Also, today, as in another day before, Mrs. Fernandez, specifically told me that I was required to work eight hours." ................"I was just on leave since October 9, 2014 until October 28, 2014. I came back on October 29, 2014. I was told that I am obligated to work 8 hours." ................. I was being harassed and retaliated against for taking the leave of absence through the Family and Medical Leave Act (FMLA).

18. In Late September of 2014 Principal Fernandez threaten to write me up if I did not speak to the students 100 % of the time in Spanish. I did as told. However, in the letter written by me, I also addressed being ordered "to speak to the students one hundred percent of the time in Spanish especially when English is mostly their native language. I find it important to speak to them in English." ......... "Can I be written up for this, when it is best to talk to them in English? My understanding is that this is a bilingual position at a dual language school. Also, I never agreed to just speak Spanish. Nor, does the contract say...."

19. Let us remember that this letter with the above quotes was written October 29, 2014. After the principal's random encounter of being told about what GRPS tells Principal Carmen Fernandez when I decide to apply for a position, you will find that I immediately wrote the letter with the quotes above and that I did not apply to any other position after October 29, 2014 because of the confrontation by Principal Carmen Fernandez. The 28th of October of 2014 was, in fact, the last day because of fears of harassment and retaliation by the GRPS and Principal Carmen Fernandez. The retaliation and harassment actions prevented me from applying for any other open administrative and/or principal positions, and GRPS knew according to what GRPS and Principal Fernandez express to EEOC.

20. GRPS did not give me a fair chance in being interview for the Burton Middle School Principal position. The position was still open. Many other qualify candidates were simply excluded. I have the qualifications requested. (We should inquiry about who and how many people applied and were interviewed, let alone the administrators and/or principals hired without Professional and/or Administrative Certifications). GRPS told EEOC that, "you never inquired about the status of your application with HR or any other central office administrator." GRPS gave me many letters about not having the requirements, and GRPS blatantly discouraged me from applying as described in Paragraph 6 through 19.

21. Later is when the district decides to hire a Female African American principal, Mrs. Lametria Johnson-Eaddy. I do not object to the hiring of a Female African American. My fiance is African American. I am just particularly interested in learning, "Why was I not interviewed when I qualify for such a position and the position was still open?; Why did GRPS and Principal Carmen Fernandez discourage me from applying after the GRPS administration mentioned to Principal Fernandez about me applying to an open position for Burton Middle School?; And last but not least, why are the Superintendent's daughter's (Denishea Killingham and Natasha Neal) and many other African Americans being hired as Administrators/Principals without Professional Educator and/or Administrators certifications.

**More Violations of Title VII of the Civil Rights Act of 1964 and the Elliot-Larsen Civil Rights Act of 1976 on the basis of Race, National Origin and Gender. I will illustrate.**

22. **Count 8, 9 & 10, respectively (Violations of Title VII of the Civil Rights Act of 1964) for the basis of Hispanic, Puerto Rican and/or Male:** Three other matters of Discrimination on the basis of Hispanic, Puerto Rican and male, were violated because, after coming back from the next Family and Medical Leave under the (FMLA) from November 5, 2014 until November 20, 2014 (because my father past away). I came back November 20, 2014, and by November 22, 2014 I reported the retaliation and discrimination done by the white female elementary teachers via email. GRPS told EEOC that another teacher was not invited. The other teacher, not invited, was considered an administrative authority figure for the kindergarten teachers (Her name is Mrs. Leslie Martinez.). Mrs. Leslie Martinez was above all of us as our lead coordinator for the Kindergarten teachers. Mrs. Martinez did as she had desired whereby she could have came to the practice session that she was not invited to and that I was excluded and discriminated from. Also, Ms. Leslie Martinez is Puerto Rican, and she was not invited. Therefore, the Hispanic Puerto Ricans were not invited. I

specifically asked Ms. Dzieciolowski, Ms. Bode and Mrs. Wayman if my class could join, and Ms. Dzieciolowski stated that my class was not invited, while Ms. Bode and Mrs. Wayman agreed. The union contract specifically states, "shared decision making". Yet, the Kindergarten concert practice was intended for the Christmas Kindergarten performance for all the kindergarten students. At that time Mrs. Leslie Martinez substituted for the other Puerto Rican teacher who was force to leave, as described to me by the former Kindergarten teacher, and Ms. Leslie Martinez was not in the same category as the kindergarten teachers because she was administering the Kindergarten Teachers. Nonetheless, if Mrs. Leslie Martinez wanted to join the practice session, she had the authority. I did not. Nevertheless, this does not exempt the fact that the Puerto Ricans were not invited.

23. **Count 11, 12 & 13 (Elliot-Larsen Civil Rights Act of 1976) for the basis of Race, National Origin and/or Gender**: These three matters were under this Act of Discrimination on the basis of Hispanic, Puerto Rican, and Male. After coming back from a bereavement leave from November 5, 2014 until November 20, 2014 (again, because my father past away). I came back November 20, 2014, and by November 22, 2014, I reported the discrimination done by the white Female, elementary teachers. GRPS told EEOC that another female teacher was not invited. The other female teacher not invited was considered an administrative authority figure for the kindergarten teachers (Mrs. Leslie Martinez.). Again, Mrs. Leslie Martinez was above all of us as our lead coordinator/administrator for the Kindergarten teachers. Mrs. Martinez did as she had desired whereby she could have came to the practice session that she was not invited to and that I was excluded from. I specifically asked Ms. Dzieciolowski, Ms. Bode and Mrs. Wayman if my class could join but, Ms. Dzieciolowski, in front of the other two teachers stated that my class was not invited, when the union contract specifically states, "shared decision making". Yet, it was intended for the Christmas Kindergarten performance for all the kindergarten students. Again, at that time Mrs. Leslie Martinez substituted for the other Puerto Rican teacher who was force to leave, as described to me by the former Kindergarten teacher, and Ms. Leslie Martinez was not in the same category as the kindergarten teachers because she was an administrator. Nonetheless, if Mrs. Leslie Martinez wanted to join the practice session, she could have done so. However, she had a choice. I did not. GRPS told EEOC about Mrs. Leslie Martinez not being invited trying to justify that it' is okay for the white female teachers to discriminate either on the basis of Race, National Origin and sex from having my students practice for the Kindergarten Concert without my students who were to have performed together with the other kindergarten classes in the same concert.

**Violations of Due Process, Fourteenth Amendment of the United States Constitution and Unlawful employment practices and retaliation against Plaintiff, under U.S. Code S 158 - Unfair Labor Practices and Title VII Retaliation Act**

24. **Count 14:** On December 2, 2014, **(Exhibit #60)** a few working days after reporting this discrimination by the white kindergarten teachers, GRPS gave me a letter of administrative

7

leave, leaving me in the dark as to why without due process. No reason was given to me about why I was put on administrative leave. Yet, the contract specifically declares giving "prompt" notice. (Also, GRPS retaliated because of the reporting and complaints made against Principal Carmen Fernandez, Leslie Martinez, and the other kindergarten teachers', Ms. Dzieciolowski, Ms. Bode and Mrs. Wayman. I will bring this charge later as I will illustrate how this retaliation led to the Grand Rapids Public Schools firing me against many of my rights under the law. Now, I will take you to Count 15, dismissal on March 16, 2015.)

25. **Count 15:** GRPS fired me in March 16, 2015 without due process. GRPS put me on administrative leave without any details whatever, and four months later, without following appropriate due process contractual procedures, GRPS declares a dismissal hearing on March 16, 2015, violating many of our policies.

26. **Count 16:** GRPS did not give procedural safeguards: notice, hearing, independent examiner, oral argument before the board, and the right to appeal. GRPS, inconsistently, states to EEOC that I "requested a hearing before the Grand Rapids Board of Education." GRPS lie to EEOC because, I did not request a hearing. On Friday March 13, 2015, I was called and informed by GRPS to see if I looked at the email sent on March 11, 2015. I finally look at the email on Friday, March 13, 2014 to learn that I have until 12 pm that day to submit whether I wanted to "request a closed session consideration of these charges by submitting a written request to the Human Resource office by twelve noon on Friday, March 13, 2015", for a Dismissal Hearing scheduled on Monday, March 16, 2015. Under duress, I did requested a closed session to learn that I was to be fired without due process on 3/16/15. Nonetheless, I did not request this hearing. GRPS requested this dismissal hearing whereby I could not challenge their decision to fire me.

27. **Count 17:** Another violation that I learned later way after the hearing when I received the actual certified letter was that GRPS was to have presented the unknown witnesses in this dismissal hearing, 4 months after I was given administrative leave. At the March 16, 2015 hearing, I was surprised with fabricated witnesses against me, without due process because according to contract, this information was to have been given to me "promptly", but at this dismissal hearing, I was fired without teacher procedural safeguards: notice, hearing, independent examiner, oral argument before the board, and the right to appeal. This March 16, 2015, dismissal hearing, was simply that, to fire me, and terminating me was not done according to Due Process guarantee by law. I complained about Principal Carmen Fernandez and Mrs. Leslie Martinez in documents before December 2, 2014, the day that I was put on leave. They became phony witnesses against me.

28. **Count 18:** I was unjustly railroaded out of GRPS. The witnesses Principal Carmen Fernandez, Mrs. Leslie Martinez and Mrs. Sanchez presented allegations that, supposedly, happened four months prior and before, and the type of allegations presented, led to a resolution against me declaring me violating Board Policy and Rules # 8300-- Student Discipline (Corporal Punishment), but yet none of these charges were presented according to procedures. GRPS harassed, retaliated and eventually fired me, basically for applying for administrative position, asking questions, and complaining about discrimination.

29. **Count 19:** "The Michigan Child Protection Law requires the reporting of child abuse ...." Wood TV 8 questioned why were these incident not reported to the police, and the state of Michigan needs to be reported as well. If I did the acts that were alleged, which I did not, GRPS did not follow the appropriate regulations. On March 16, 2015, no matter what I stated, it was already decided that I was going to be fired, without appropriate teacher safeguards. Again, I was not even presented with any witnesses before this hearing, and in this hearing, there was no cross examination allowed. Not to continuously repeat, but I did not learn about the witnesses until March 16, 2015, at the meeting where I was fired. However, it took GRPS four months to orchestrate such non-sense. The meeting was just a mere declaration of my termination. Basically, on Friday March 13, 2015, I was given until 12pm to decide whether to be fired publicly or privately. GRPS just made me aware of my how dismissal, and GRPS just gave me a choice of how and where I was to be fired.

30. Yet, on October 29, 2014, I reported how GRPS and Principal Carmen Fernandez harassed and discouraged me from applying for any administrative positions way before their allegations occurred. Also addressed, were the discriminatory acts done by the White teachers and the complaint made against Mrs. Leslie Martinez.

31. **Count 20:** On December 2, 2015, after given a letter declaring administrative leave without any reasons by the Grand Rapids Public Schools, I requested a union representative. The principal, Mrs. Carmen Fernandez did not grant one. GRPS interfere with and retrain me in the exercise of my right to receive representation, according to our contract. Asking for a representative was a lawful concerted activity, that should never have been compromised. GRPS violated this request.

32. **Count 21, 22, 23 & 24:** GRPS did not even follow the union lawful contract by "promptly" bringing forth four allegations with different times and dates "to that employees attention", even though I had a letter done and given to them by Attorney Sandra Burink requesting that I be given notice of the reason for the administrative leave, GRPS schedules a meeting. Please keep in mine that prompt notices were not given not only for one allegation but for four different allegations in which I am charging because of no due process for each allegation was done.

33. In the GRPS/Union Contract, Article 13, Letter G. Complaint About An Employee, it states; "1. Any complaint directed toward an employee which is to become a part of that employee's permanent personnel record and other legitimate complaint shall **promptly** be called to that employee's attention." GRPS shows blatant disregard to this obligation.

34. The four allegations that were eventually brought forth did not follow this particular guideline. Nor, do the allegations follow other guidelines in the contract. Later, other violations against GRPS for not only lack of promptness **Count 21, 22, 23 & 24**, but also more charges will be illustrated for violations with the same GRPS's allegations. There are different breaches of different components for each of GRPS's allegations in Paragraph 139.

35. **Count 25:** GRPS gave my personal file to Wood TV 8, to Dani Carlson without honoring the guidelines, thus violating Due Process. "1. Any complaint directed toward an employee which is to become a part of that employee's permanent personnel record and other legitimate

complaint shall **promptly** be called to that employee's attention." Not only were these allegations given, not done according to the "promptness" rule, but those four allegations were written and fabricated in a second personal file given to Wood TV 8 on April 2, 2015. More charges will be brought forth later in Paragraph 139, in which more breaches of the guidelines of the contract our committed.

36. The reason for the second personal file was because Attorney Sandra Burink, wrote a letter, on my behalf, on March 26, 2015, pursuant to the Bullard-Plawecki Employee Right To Know Act, MCL 423.501, et seq (The Act). This letter was written, because the first personal file requested by me, because Wood TV 8 requested it on March 20, 2015, did not include many documents, according to the Freedom of Information Act. The personal file was given to Wood TV 8 and me, on March 25, 2015. However, the personal file did not include letters that were written, particularly a letter from around November of 2014 that was written by the GRPS to me through Ms. Jennifer Saylor. Ms. Saylor told me that I already had a mentor. Nevertheless, I was requesting a mentor, because I was not ever helped by this mentor, and the mentor never stuck to her appointments as described in my response letter on November 22, 2014 to Ms. Jennifer Saylor.

37. **Count 26:** GRPS never gave my full personal file to me, pursuant to the Bullard-Plawecki Employee Right To Know Act, MCL 423.501, et seq (The Act) neither the first time asked, nor the second time, requested, by Attorney Sandra Burink. I requested it, again, on April 7, 2015. because after the second personal file was given on April 2, 2015, the personal file still did not include every document entitled under the Act. After the letter written to GRPS on April 7, 2015, GRPS just ignored any requests.

38. However the 2nd personal file, given on April 2, 2015, included fabricated and very questionable documents, and interestingly, these documents were not given to Wood TV 8 and me, the first time requested on March 20, 2015, when the first personal file was given by GRPS on March 25, 2015. It was not until after Attorney Sandra H. Burink requested this second personal file, that the second fabricated and questionable files were given. However, our intention was to obtained certain emails that helps to tell the events that had taken place.

39. Nevertheless, this second personal file will reveal a great part of how GRPS tried to cover their tracks, and it was given especially after GRPS was asked for the file, according to the ACT by Attorney Sandra Burink. Interestingly, GRPS wrote an email, with the second personal file attached. The email, on April 2, 2015, was as follows;

40. "Pursuant to the request of Ms. Sandra Hanshaw Burink, please find attached the investigative file, as I have already sent you your personnel file on March 25, 2015 to this same email address. As for your compensation pay, I am confirming the time and will follow up with you ASAP. If you have any questions, please let me know."

41. **Count 27:** First of all, the email sent on March 25, 2015 had an attachment that was quite different. Second, in this email she wrote the letter as if she already sent these same documents before. (This 2nd personal file was just created, and proving this will in no way be difficult, especially when the witnesses and evidence are presented.) Third, I bring forth **Count 27:** under the Prompt Payment Act, because she never contacted me about compensation. The extra hours worked were never paid to me.

42. The particular letter that I wanted was written in late November of 2014. This letter was before December 2, 2014, the day that I was put on administrative leave. My father died on November 5, 2015, and according to The Family & Medical Leave Act and for bereavement, I needed to take November 6, 2014 until November 19, 2014. On November 15, 2014, I responded to the letter, written by GRPS, asking if any new employees needed a mentor. In the letter on November 15, 2014, I wrote;

43. "Dear Jennifer Saylor, I need a mentor. Because of my father's death, recently, I am on a bereavement leave until Thursday, November 20." I merely just wanted help from GRPS.

44. In a response letter by GRPS, the letter stated that Mrs. Martinez was my mentor. However, Mrs. Martinez missed schedules when she was to mentor and blatantly refused to help me, after getting back from bereavement. I responded to Ms. Jennifer Saylor's letter describing how I was not helped. On November 22, 2014, I responded to Ms. Jennifer Saylor explaining how I was not helped and denied mentorship by Mrs. Martinez and how she was never present when scheduled. In that letter, many other things were mentioned that involved how the White teachers discriminated me, as I experienced. This was mentioned above in Paragraph 22 and 23.

45. **Count 28:** Then, approximately six days of at-school working from November 22, 2014 until the day of the administrative leave paper without telling me why, on December 2, 2014, I am given a non-specific letter declaring no allegations. Against the Retaliation Act, GRPS retaliates against me for the actions done by me that I specially documented since GRPS and Principal Carmen Fernandez discouraged me from applying to Administrative and/or Principal positions October 29, 2015, along with oral and written confrontations described above in paragraphs 30 to 45 before this administrative leave papers were given on 12/2/14. GRPS harassed and retaliated by firing me, basically for asking questions, complaining about discrimination and applying for administrative positions.

46. Before being given this letter for administrative leave on December 2, 2014, the chronological order of events that had taken place before this day our documented either by GRPS or myself. Please note that there has never been any reprimands documented, whereby I was made aware, before December 2, 2014, nor immediately afterwards, as GRPS, later claims certain incidents in April of 2015, when a second personal file was given to Wood TV 8, to Dani Carlson. However, the broadcasting of the second news clipping by Wood TV 8, questioned GRPS procedures.

47. **Count 29:** Principal Carmen Fernandez gave an oral warning, to speak 100% in Spanish to the students, on or about September 25 of 2014. Principal Carmen Fernandez, harassed and threatened to write me up if I did not speak to the students, 100% in Spanish, to an 80% English Speaking Kindergarten classroom when I accepted a Bilingual teaching position. I reported, the threatening of a write-up by GRPS, verbally and through documentation. Yet, my Bilingual position contract never illustrated that I was supposed to speak Spanish 100 % of the time. Nonetheless, I did my best to follow Principal Carmen Fernandez's directions.

48. **Count 30:** GRPS violated another Discrimination Act **(Title VII, Discrimination)** on the basis race, because the White new eighth grade teacher was not required to speak Spanish 100 % of the time, but I was, and never was I made aware of such requirement before I accepted the position, as I signed a contract indicating that this was a Bilingual position**.**

49. **Count 31:** GRPS violated another Discrimination Act **(Elliot-Larsen Civil Rights Act of 1976)** on the basis race, because the White new eighth grade teacher was not required to speak Spanish 100 % of the time, but I was, and never was I made aware of such requirement before I accepted the position, as I signed a contract indicating that this was a Bilingual position.

50. On December 2, 2014, the Grand Rapids Public Schools gave me a letter that was not specific of any allegations. More than a month later, on the day of a January 5, 2015, during the finally scheduled meeting, GRPS had taken 20 minutes to type four allegations. GRPS's month-delay, interfered not only with the part of the GRPS/union binding agreement for not "Promptly" mentioning the allegations above in paragraphs 32 to 34, but for other enforceable contract obligations."

51. I will describe how GRPS did not follow due process, according to the guidelines for the other parts of the contract, but first I will describe my attempt during the month of December of 2014 to get the information promptly from GRPS. I wrote the union (Mr. Chad Williams, Ms. Mary Bouwense & MEAmembership@mea.org) about this matter, on December 3, 2014.

52. "Dear Ms. Mary Bouwense, Chad Williams & MEA Membership, This is the letter (The letter was attached to an email.) that I've received, yesterday. I did ask for representation, and none was granted. I did not sign it. What do I do?"

53. On December 3, 2014, Mr. Chad Williams (who was one of the names given by the Principal, Mrs. Carmen Fernandez on October 29, 2014,) wrote; "........... union representation is not obligatory; however, when they schedule the investigatory meeting, you are entitled to representation at that meeting and I will be there with you"........

54. "Do not contact or call fellow GRPS staff, students, or parents......Do not go onto school grounds to retrieve any items – contact me or Human Resources to make arrangements if you need."

55. I was still unaware of what is going on. However, the contract states the following, "legitimate complaint shall promptly be called to that employee's attention." I wrote Mr. Chad Williams again that day on December 3, 2014, because he did not answered my telephone call, and this matter is serious, where by I am not confronted according to the contract. In the letter, I wrote;

56. "I called earlier, today, a little after 4 pm. The receptionist transferred the phone to you, but it kept ringing. I couldn't leave a message." Mr. Chad Williams did not write or return a call, so I wrote him the next day on December 4, 2014, and I cc. to Ms. Mary Bouwense: Specifically, on the subject line, I wrote;

57. "I need to know what I am going to be question for." In the email, I wrote, "I have not been told what exactly is the matter about. Isn't the district suppose to let us know what I am

going to be questioned about? Again, I am in the dark as to what is going on, and aren't I entitled to know?"

58. GRPS and the GREA/union was not administering the contract. The actual GRPS/Union Contract Agreement, states;

59. Article 13, Letter G. Complaint About An Employee, states;

"1. Any complaint directed toward an employee which is to become a part of that employee's permanent personnel record and other legitimate complaint shall promptly be called to that employee's attention."

"Article 13, I, Staff Reprimand (#2)"

"2. Before placing a written reprimand in" a ..... "teacher's personnel file, the administrator making the reprimand shall:

"a. present the ancillary staff being reprimanded a copy of the reprimand.

"b. give the ancillary staff an opportunity to have an Association representative hear the reasons for the reprimand.

"c. require the ancillary staff to sign the original which indicates only that the employee has had the opportunity to read the reprimand. The signature is in no way to be construed as acceptance or approval of the reprimand but is a verification that the employee is aware the reprimand is in his/her permanent file. The employee shall receive a copy at the time of signing."

60. By not following our binding agreement, in essence, GRPS and the union restrained and interfered me, from exercising its appropriate declarations, again and again, violating the contract on many occasions. As I was trying to assert the GRPS/GREA Contract Agreement, by having the union representative obtained "prompt" reasons for the administrative leave given to me, because GRPS did not follow the rule, the union representative, GRPS and Mr. Chad Williams, a friend and a former GRPS administrator, was restraining and not helping in the administration of the contract. Therefore, I wrote another letter to Mr. Chad Williams on December 4, 2014.

61. "Subject; I need to know what I am going to be question for." In the email, I wrote, "I have not been told what exactly is the matter about. I am in the dark as to what is going on, and aren't I entitled to know?"

62. Mr. Williams responded to the letter, and this was Cc. to Mary Bouwense. This email shows a blatant violation being committed by the union, under **"Section 10 (2)(a) of PERA whereby "Illegal restraint or coercion by a union includes threats to retaliate against employees who will not join or are not dues paying members of the union ....".** Mr. Chad Williams wrote, "You just recently filled out a membership application and have paid $0 in dues," Mr. Chad William declared this in the email dated December 5, 2014.

63. Also, in that email, "As such, you are not now and have never been a member in good standing – this means the service you are entitled to is very limited. That notwithstanding, you have received service from this office on several occasions already this year....."

64. First of all, no services have been received, before the December 2, 2014 administrative leave letter, because my inquiries were ignored and not followed-up. At that time, I was being told in an email, that I "have never been a member in good standing- this means the service you are entitled to is very limited." Yet, I was trying to obtained the reasons for being put on "administrative leave" by the person who is friends with the principal at GRPS and who is a former administrator for GRPS. At that time, I could never be classified as a member not in good standing, when there was no union representative in our building, and I just sign a contract a few weeks before. I was a member in good standing, according to my understanding. Mr. Chad Williams was not acting as a union representative. Nonetheless, I responded to his letter as follows on December 5, 2014.

65. "I filled out the application on November 3, and a Union representation in our building has not even been present. Although, there was a representative that did arrive less than two weeks ago, she did come to explain joining and 'good standing'. When I specifically asked about my scenario because I just became a GRPS teacher, she stated that my situation is understandable. Also, I was on leave for some time for my father's care and then bereavement. Because of the leave of absences, my money matters have been compromised, greatly, and the Union has the nerve to state that I "have never been a member in good standing"! Well, that's ridiculous, because I need to be given a chance to pay!"

66. ".......I questioned some of the unfair labor practices and contract breaches, like "make up preps", "extra hours", "the principal telling me that I am obligated to work 8 hours", "being obligated to attend anti contract meetings", among other matters. Where has the union been since these questions arose............." "I only just got a bill just recently. The matters that arose that I addressed, were not at all diligently handle, and you have the audacity to try to justify the union's (no responses) as "received services", described in your last email."

67. "...................I respectfully ask that the union deal with this matter appropriately and try to get the specifics about why I am being restricted to even go to the building. I am concern about why I am being left in the dark, and it's taking such a great amount of time to even let me know......."

68. **Count 32:** In fact, according to our contract, I am to be notified first of the specifics, before even requesting a union representative, which was not given by GRPS or obtained "promptly" by Mr. Chad Williams. Still I did not receive the administration of my contractual rights. GRPS did not give any thing, nor did Mr. Williams make sure that a "legitimate complaint shall promptly be called to that employee's attention." For whatever reasons the contractual obligations were ignore, GRPS or the Union did not comply with this rule.

69. Nevertheless, I continuously asked why I was being questioned. On Friday, December 05, 2014 10:32 AM in the email I asked, "Have you found out why I am on leave?"

70. On December 5, 2014, Mr. Chad Williams writes, "I have you confirmed for 3pm 12/8. Regarding the reason you have been put on leave. My preliminary inquiries are inconclusive at this point; however, I have a meeting with HR Monday prior to our meeting, so I'll have more detail then. See you at 3pm."

71. It is interesting that three to six days will have past since the administrative leave paper was given and a dialogue about my situation has been created with Mr. Williams and will be continued without me at a scheduled meeting, but I still know nothing. Nothing was gotten

by the union or given by the Grand Rapids Public School. Therefore, I kept asking questions, as my future mother-in-law, a former teacher, encouraged.

72. On Friday, December 05, 2014, I wrote to Mr. Chad Williams and asked, "What are you basing your preliminary conclusions on? Has GRPS stated anything to you? Aren't I entailed to due process, especially by being inform as to why have I been restricted from going on school? What is being alleged as unprofessional conduct?"

73. Mr. Williams Replied, on Friday, December 5, 2014, "I have made informal inquiries, but nothing has been confirmed. I do have a formal meeting on Monday as I've stated and at that point I will have more detail...." "So as to not complicate this issue further, please refer to my previous email regarding no contact with staff, students, or parents."

74. Mr. William directed me to comply with GRPS directives, and yet no specifics are given according to the contract requirements mentioned above, and aren't the allegations supposed to be given to me first. Again, in the GRPS/GREA Contract Agreement, a "legitimate complaint shall promptly be called to that employee's attention."

75. However, it was important to persist. So, I responded with another email on December 5, 2014, "Shouldn't they have mentioned who, what, when and where? Due process of law is my federal right. Defamation of character has already taken place, and nothing has been given specifically. At least let me know what you know."

76. Mr. Williams did not try to administer the contract. From December 2, 2014, while I was persistently writing the union, receiving correspondences from the union trying to get the specific allegations from the union representative, that GRPS should have given me, GRPS scheduled an appointment with the union representative Mr. Chad Williams, on December 8, 2014, without me. I found it very interesting that when I had asked for a union representative, none was granted, but a scheduled meeting was made with the union representative without my presence on December 8, 2014, and that meeting show have been done with me.

77. Yet, when I first made Mr. Chad Williams aware of the actions taken by me on October 29, 2014 orally and via email, when I learned from his friend Principal Carmen Fernandez that he was my union Representative, Mr. Chad Williams did not help me, at all. Also on that very same day, October 29, 2014, he told me himself that he was a friend of Principal Carmen Fernandez, and that he use to be a former GRPS administrator. This eventually led to Charges against the Union with the Michigan Employment Relations Commission (MERC).

78. I began complaining to the union about many intimidating instances described in paragraph 6 through 21, about Mrs. Carmen Fernandez, who gave me, Mr. Paul Helder's and Mr. Chad William's information on October 29, 2014. Principal Carmen Fernandez brought these names from the union some time after consulting with the GRPS Administration because Principal Carmen Fernandez did not know how to respond to some of my direct complaints to her, after her discriminating attempt to tell me that I would have to quit first, in order, to be considered for an administration position.

79. When I spoke and wrote to the union representative, Mr. Chad Williams, on October 29, 2014, I also sent a letter, to Mr. Chad Williams. These complaints were given to the union

done more than a month before the Grand Rapids Public Schools gave me the December 2, 2014 letter, declaring administrative leave.

80. Nevertheless, in the letter sent to the union on October 29, 2014, I told Mr. Chad William, that Mrs. Fernandez told me that the GRPS will not consider hiring me as an administrator because I already have a contracted position. I explained to the union, that, one of the questions that I asked before being hired, was, that, if I accept the kindergarten position, if I apply for an administrative position, would it be possible to get hired throughout the GRPS system? Again, before I accepted the position, it was reported through documentation by GRPS that I can be hired, if I accept the position and apply for another. I told the union that Mrs. Carmen Fernandez suggested that I would have to stop working for them in order for the board to hire me as an administrator. I also stated that I would like to be considered for a position whereby my qualifications fit.

81. On October 29, 2014, I also told the union that every day since the beginning of the school, I was required to be with students or even be on duty, more than the contracted hours. Also, on October 29, 2014, as in others days before, Mrs. Fernandez, the principal, specifically told me that I was required to work eight hours. I reported this harassment to the union, but nothing was done on my behalf. Also, I even reported the amount of hours worked, and I even asked the union if I could refuse any other duty requirements if they exceed more than the contracted hours. The union did not take action on my behalf.

82. I reported also that I was just on leave, since October 9, 2014 until October 28, 2014, because of my father being on his death bed. I came back on October 29, 2014. I was told, by the principal, that I am obligated to work 8 hours. I mentioned that according to my understanding, the contract is different. Then, I mentioned the other matters like being compensated for extra hours, and it was told by the principal that no one ever ask to be compensated. I also reported to the union, that I stated to Mrs. Fernandez that, "Doesn't the Union contract state that I should be given extra for extra hours worked?" Therefore, it seems that I am owed 45 minutes for each day (26 days) worked, except for one professional development that I attend and half day. The union did not take action.

83. I reported to the union that I am being asked to speak to the students one hundred percent of the time in Spanish especially when English is mostly their native language. I find it important to speak to them in English. "Can I be written up for this, when it is best to talk to them in English?", I asked Mr. Williams. I reported to the union, that my understanding is that this is a bilingual position at a dual language school. Also, I never agreed to just speak Spanish. Nor, does the contract say anything so. The union did not represent me in this matter, as well.

84. The GREA/MEA union, ever since October 29, 2014, has demonstrated no desire to appropriately demonstrate proper representation, and GRPS did not give me a representative when I asked, on December 2, 2014, when an unspecified letter was presented. This letter basically gave me a bunch of orders without giving me anything according to the GRPS/ GREA contractual agreement. Again, the contract states that "legitimate complaint shall promptly be called to that **employee's attention.**" The supposed allegations and/or complaints should not have been secretly discussed without me on December 8, 2014.

whereby nothing was given to Mr. Williams, as my future mother-in-law and I have can verify, as she attended the meeting with me.

85. After the secret GRPS and Mr. Chad Williams scheduled meeting without me, on December 8, 2014, Mr. Chad Williams, the union representative had not given me any allegations that he was supposed to find out about, during our scheduled 3:00 pm meeting.

86. In meeting on Monday, December 8, 2014, my future mother-in-law, Mr Chad Williams and myself were present. Mr. Williams was still unaware of what I was being charged with, and instead of telling me what I was being charge with, he asked me if there is anything that I could tell him. Of course, I explained the actions taken by me as I have also made him aware orally and via email since on October 29, 2014, when I learned from Principal Carmen Fernandez that GRPS tells her when I apply for a principal and/or administrator position, along with many other complaints mentioned in Paragraphs 78 to 83.

87. Also, on that day, a student left the line of my class on the way to Art Class, and he was found immediately. Mr. Williams tried telling me that since Michigan is an at-will state that they could fire me without having a reason. I disagreed with him because according to our teacher rights their has to be a valid reason for firing a probationary teacher. Nonetheless, there was still nothing mentioned, about why I was being put on leave.

88. Instead of telling me any allegations or charges by GRPS, the Union representative Mr. Chad Williams, asked me if I could think of anything that I have done. Sixteen days after being given this administrative leave paper, still without knowing anything that had been alleged about me, just before Christmas break, I received a letter dated on December 18, 2014. An of a investigatory meeting was going to be scheduled on January 5, 2015. Still the contractual obligations were not met by telling me specifics.

89. I then wrote Mr. Chad Williams to inquire about these specifics on 12/19/14. "An attorney expressed the importance of getting information a least a week in advance before the inquiry. Could we try to do this?" No response was given by Mr. Chad Williams.

90. On December 29, 2014, I sent Mr. Williams an email along with an attached copy of the letter that Attorney Sandra Hanshaw Burink, wrote to GRPS on December 23, 2014, on my behalf, regarding being "provided with the relevant information, including the substance of the allegations."

91. Even though I gave the information to Mr. Chad Williams about the letter that the attorney from Powers Chapman wrote about getting this information in advance, the union never help or addressed the obligations under the contract. Again GRPS and the union did not make sure of the following, "1. Any complaint directed toward an employee which is to become a part of that employee's permanent personnel record and other legitimate complaint shall promptly be called to that employee's attention."

92. Before the January 5, 2015 meeting, on December 8, 2014, after 3:00 pm, in the scheduled meeting with Mr. Chad Williams, I was told by Mr. Chad William, himself, that I would be able to seek counsel, if I felt that I needed an attorney at the eventual scheduled meeting. Again, Mr. Williams told me this before I even knew when the meeting was to be scheduled. Also, during the finally, scheduled January 5, 2015, meeting, I was told the same about being able to seek advice from counsel, if I chose.

93. I have witnesses on both occasions. Two affidavits verifying this information given have been written by Ms. Tahleekah Partee (my fiance) and Mrs. Artimisisia Banks (my future mother-in-law). Mrs. Artimisisia Banks was present at both meetings that I had with Mr. Williams, and Ms. Tahleekah Partee was present at the January 5, 2015 meeting with Mr. Chad Williams. Still, Mr. Chad Williams, the union representative, did not make sure that the district was prompt and/or specific even on that day of the January 5, 2015, meeting.

94. Nonetheless, on January 5, 2015, I decided that it be best to pursue the medical attention that was prescribed by Emergency Care two days prior, especially because my symptoms began to occur. On January 3, 2015, an ambulance was call to take me to the Emergency Room, in which seeking immediate medical attention was prescribe, but I was so afraid of loosing my job that I tried going to the meeting. However, medical immediate attention prescribed and seeking legal advice was necessary because the union had not been representing me, and the union representative told me when he was asked on several occasions that I can choose that option to seek legal counsel. Nor, had the union made it a point to follow the contractual obligations listed above. Also, I did not feel comfortable with Mr. Chad Williams especially because of how my contractual rights were continuously being compromised, and he was referred to me by GRPS and his friend the principal, herself. Another discouragement was, when he told me that my Garrity Rights required that I answer any questions, whereby I understood those rights to be my Fifth Amendment Protection.

95. At this January 5, 2015, meeting, interestingly, the Grand Rapids Public Schools took 20 minutes to type four vague matters, and none of them were specific nor true, except that a student left my classroom line as I took them to Art class, but that was no negligence of mine. Nor was GRPS candid about of what happened to the missing student, accurate.

96. However, as I left, when I opened to door to leave GRPS, I look at the staff members who were present and waiting to go to the meeting since the still non-specific allegations were given at 4:30 pm as the union representative, (Mr. Chad Williams), my finance, future mother-in-law and I, witnessed. The GRPS literally stood outside, since they finally gave the just-written-non-specific allegations at 4:30 pm to review. I was told be the Chad William on December 8, that we would have 30 minutes to review what will be presented. GRPS waited there as the union representation (Mr. Chad Williams), my future mother-in-law, finance and I, were going through the unspecified allegations.

97. However, the four just-written non specific, without names of who, what happened, when it happened and where did it happened were not true and just created because GRPS wasn't prepared for their scheduled meeting, because GRPS just typed up the allegations. My future mother-in-law and finance were present, and they are witnesses to having to wait for GRPS to write these allegations.

98. At this January 5, 2015, meeting, no more than 10 minutes passed, that the union

representative, my future mother-in-law and my finance and I, discussed the allegations. I left that January 5, 2015, meeting, because I needed to follow with medical care immediately just prescribed January 3, 2015, 2 days prior, when I went to Emergency Care at the Hospital, and because I was medicated. Also, I wanted to review the allegations with an attorney that wrote to the Grand Rapids Public School on December 23, 2014, on my behalf, prior to this January 5, 2015 meeting, in which specifics were requested, so that I could properly be

represented, especially because lawful binding procedures were compromised. On January 5, 2015, I respectfully stated directly to the staff members, "I'm ill. I'm going to take the recommendations of the doctor and attorney, and then I'll get an answer to you, regarding this," referring to the allegations. Then, I said, "I'll send you a copy of this", referring to the medical recommendation.

99. Again, because of my medical symptoms, I decided to pursue my medical recommendations and follow-up with counsel, especially as this was understood to be my right, even according to the union representative, Mr. Chad Williams, and according to the Family and Medical Leave Act, which is federally protected.

100. Yet, nothing was ever prepared for GRPS's, delayed, scheduled meeting on January 5, 2015, even though GRPS proposed the meeting more than two weeks prior. In fact, on December 23, 2014, Attorney Sandra Hanshaw Burink, wrote, on my behalf, stating, "as of this date Mr. Santiago has not been provided with any information regarding the allegations."

101. I left that January 5, 2015, meeting, because I needed to follow up with medical care immediately just prescribed January 3, 2015, 2 days prior, when I went to Emergency Care at the Hospital, and because I was medicated. Also, I wanted to review the allegations with an attorney that wrote to the Grand Rapids Public School on December 23, 2014 (describe in paragraph 90), prior to, this January 5, 2015, meeting, where specifics were requested, so that I could properly be represented especially because proper procedures were compromised. Again, on January 5, 2015, I respectfully stated directly to the staff members, "I'm ill. I'm going to take the recommendations of the doctor and attorney, and then I'll get an answer to you, regarding this," referring to the allegations. Then, I look at the staff and said, "I'll send you a copy of the medical recommendation."

102. Again GRPS and Mr Chad Williams did not administer the contract, because none of the stated allegations follow the GRPS/GREA Contract Agreement. After reviewing the rules on paragraph 59, you will be able to see the many violations done by just these four GRPS allegations, as a violation only needs to compromised one component of the rule and/or guideline to constitute only one violation. Thus, many more infractions will be noticed.

103. In paragraph 50, I mentioned, "GRPS had taken 20 minutes to type four allegations. GRPS's month-delay, interfered not only with the part of the GRPS/union binding agreement for not "Promptly" mentioning the allegations above in paragraphs 32 to 34, but for other enforceable contract obligations." Still, the allegations written minutes just-before that January 5, 2015, meeting, did not have the specifics and still were not according to GRPS/ GREA contractual obligations. As mentioned, I told both GRPS that I was sick and I was going to seek legal counsel, because my rights have been continuously compromised.

104. **Count 33:** Violation of the Family and Medical Leave Act, GRPS, wrote in a letter dated January 5, 2015. In that letter, GRPS stated, "We consider your refusal to meet with us insubordination."..... ".... we are recommending the termination of your employment with Grand Rapids Public Schools to the Superintendent and Board of Education." GRPS did not consider this federal obligation, under the Family and Medical Leave Act (FMLA).

105. **Count 34:** GRPS threaten to fire me, thus retaliating against my FMLA right, in violation of the Federal Retaliation Act.

106. In an email dated January 7, 2015, Mr. Chad Williams, stated, "Any communications regarding medical information related to an employee disability is a confidential matter between the employer, the employee, and the physician.".......... "I would presume that you and or your physician sent the physician's note dated January 7, 2015 to GRPS Human Resources."

107. While giving medical reasons for not attending the meeting, to GRPS and Mr. Chad Williams, (the former GRPS administrator and friend), nor was GRPS or Mr. Chad Williams sensitive to why I am letting them know, especially because I was sick during that meeting, whereby Mr. Chad Williams is supposed to represent me, Nevertheless, medical notice was given to GRPS and him on January 5, 2015 as my fiance and future mother-in-law witnessed.

108. The union has not been representing me during the process, until and since my termination on March 16, 2015. On January 6, 2015, I respond to Mr. William's because he stated that I received full representation, when a meeting with the GRPS never took place. The union still did not adequately represent me, but I responded to Mr. Williams on January 6, 2015, stating;

109. "As I mentioned yesterday, I requested that I seek prescribed medical attention first, and, also, I want to review this matter with an attorney. Now, I am under the impression that I can do this, especially when I'm being frivolously attacked"............."according to my understanding, I can seek medical attention and legal advice, as I requested. Now, if the board takes action, nonetheless, I need to be confronted, or told what action will be done in writing, otherwise my contract will be compromised."

110. I did follow up with my doctor and the proof was forwarded to GRPS and the Union. On January 13, 2015, Mr. Williams responded, "With respect to any further actions the Association can take, if you have received a notice of dismissal or non-renewal of your employment with the district, this notice would be more than 15 days before the end of the school year and there is no contractual grievance applicable;"...... "I regret to inform you that I believe there is no further action available to the Association in this matter."

111. Wow! I still have not been protected with the given rights guaranteed under the GRPS/ GREA Contract Agreement as I have continuously been asking through written letters, but Mr. Chad Williams still states that **"I regret to inform you that I believe there is no further action available to the Association in this matter."** No regard is given to the advice that Mr. Williams (himself) gave regarding me being able to seek legal counsel, and my medical conditions were ignored, against the FMLA Act.

112. Also, I did respond to GRPS, giving GREA and GRPS my medical records. However, still none of the contractual procedures were followed by GRPS and/or questioned by the union even though they have been acknowledged about my protected rights through documents and the Attorney Sandra Burink . GRPS and the Union representative, Mr. Chad Williams did not administer the contract, and the contract's specific obligations were not even considered, even though Attorney Sandra Burink and I tried.

113. However, On February 24, 2015, when I received another letter indicating that GRPS was going to move towards my termination, I wrote to Mr. Chad William and Mary Bouwense on the same day, February 24, 2015;

114. "I just received the letter today, and Grand Rapid Public Schools (GRPS) expects me to respond by tomorrow if I want to be consider, as the letter states, 'you may submit a written statement to the Board for it to consider along with the proposed charges.'" I told the union that, "'Literally, I am given less that 24 hours to respond to GRPS.' The letter just received on February 24, 2015 by GRPs, reads as follows, 'This letter also confirms that we have provided you, along with your GREA representative, with an opportunity to respond to these charges.'" "Yet, I just got this letter in from the post office today. I want to be given an opportunity to be represented and give a response. Is the Union going to help me in this matter?" Never was representation or opportunity, before or on this termination attempt, given by GRPS or the Union, to be represented and still no regard was considered for the FMLA Act or Due Process of Law.

115. The GRPS letter also stated, "If you wish to do so, the statement should be submitted to the Human Resources office by twelve noon on February 25, 2015." It was 2:01 pm on the 24th of February, 2015 when I emailed the union, and I was expected to respond to GRPS's first proposal of whether I wanted to be fired publicly or privately, without Due Process. In the letter written to the Union, I asked, "What do I do? I have not been tried nor given due process. GRPS is just railroading me through a Kangaroo Court that aims to degrade my character, and I am not part of the process. Nor, have I been faced with any accusers."

116. Also contained in the letter to the union, was, "The board is moving forth about conduct that is false and not even proven. Again, no due process has been done. The board states that I denied all of the charges. Yet, the board writes, "we have determined that there is sufficient evidence that he did engage in these behaviors and they violate the district's corporal punishment policy, and demonstrated that he is unfit to teach." "Even in many parts of this letter sent, clearly the GRPS is unclear as to what time and day these accusations are made. Again, is the Union going to represent me?" "What is it that I should do regarding this matter? Shouldn't I be given sufficient time to respond to this non-sense?"

117. No opportunity of Due Process was ever given by GRPS regarding the allegations. Nothing was follow by the GREA or the GRPS under the article in Paragraph 59, by giving prompt notice, being given a copy of the reprimand, having a union representative, and/or having me sign.

118. Because this was a timely matter, I immediately wrote to Mr. Chad Williams, the Union representative, especially because of GRPS's attempt to fire me again. I did not receive anything yet in writing from Mr. Williams, but I called taking notes on Wednesday, February 25, 2015. Then, I wrote a letter on Wednesday, February 25, 2015 at 3:49 p.m. (**Exhibit 124**).

119. "Subject: You said, "You've received all the representation that you'll get." Then I wrote in the letter, "When I called today asking if the union is going to help me regarding the letter that was forwarded to the union about moving towards dismissal, you stated, 'You've received all the representation that you'll get.' Apparently, you've received the letter from the Grand Rapids Public Schools motioning towards the dismissal of my contract, and the union is going to not do anything. If I am incorrect, please let me know."

120. Mr. Williams responds on Wednesday, February 25, 20115, which reads; "Your quote is incorrect. I stated that "I've done all that I can do." .............. "I would refer you to my January 6, 2015 and January 13, 2015 emails that explains the representation you received as well as section 38.83 of the Tenure Act that pertains to your probationary employment with Grand Rapids Public Schools.........." "You have received fair representation in this matter, your own actions and failure to meet membership obligations notwithstanding."

121. Mr. Chad William again reiterated memberships dues in this statement violating, Section 10 (2)(a) of PERA which "provides that it is unlawful for a labor organization or its agents to restrain or coerce public employees in the exercise of their rights ......"............ "Illegal restraint or coercion by a union includes threats to retaliate against employees who will not join or are not dues paying members of the union ....", ".....This duty of fair representation extends to both the negotiation and administration of the contract."

122. Then I responded, on Wednesday February 25, 2015 to Mr. Chad Williams, and I Cc: Mary Bouwense (mary.bouwense@grea.org); PHelder@mea.org (phelder@mea.org); Anderson, Gladys (ganderson@mea.org); aisha.lofton@grea.org (aisha.lofton@grea.org)

123. "Dear Mr. Chad Williams, So, basically, you stated, and I will paraphrase what you wrote, but correct me if I'm wrong. The Union is not going to do anything else, even though I am up for dismissal on March 2, 2015, in which a letter was sent to the union stating that that is going to be proposed this Monday at the board meeting. Also, GRPS states that I denied all these charges, but they will move forth with this motion, when none of it is true. Yet you ('I've) have done all that I can do', as you wrote. Even though at the meeting you did not bring forth that I was going to seek legal counsel and retrieve prescribed medical attention, as my future mother-in-law and fiance witnessed. Where did you represent me by even letting them know what I asked you (to tell GRPS), specially to do about the legal counsel and medical attention? Is that all that you, the union, can do? Please let me know if I'm wrong."

124. Still, none of the contractual rights were honored, and GRPS decided to postpone their effort to fire me, on March 2, 2015. However, I was surprised on March 13, 2015, by Ms. Tina Rachal, secretary for the attorney, for GRPS. Ms. Tina Rachal called me to see if I have gotten the letter via email. On Friday 13, 2015, I did check my email. However, no specific names were given about those phony vague allegations in the first letter on March 11, 2015.

125. On Friday, March 13, 2014, I emailed Mr. Chad Williams, and I had Cc: Mary Bouwense, Helder, Paul, Anderson, Gladys and aisha.lofton@grea.org."Ms. Tina Rachal called today and made me aware of a certified letter that I have not received. She asked me if I want a closed session at the dismissal meeting, I was not able to answer because I need representation. Is the Union going to represent me in this matter?"

126. Mr. Williams responded on Friday, March 13, 2015, and Cc. to Mary Bouwense; Helder, Paul ; Anderson, Gladys; and aisha.lofton@grea.org. "This matter is now an issue of employment with the district, which the district has exclusive right of hiring, placement, and termination of probationary employees. It is not however a contractual matter that requires or compels union representation."

127. I responded on March 13, 2015, that, "I want to file a grievance for inappropriate procedures." These are the GRPS/Union contract procedures in Paragraph 59.

22

128. In this letter on March 13, 2015, I wrote, "On page 70 of Article 13, Letter G. Complaint About An Employee, states;

"1. Any complaint directed toward an employee which is to become a part of that employee's permanent personnel record and other legitimate complaint shall promptly be called to that employee's attention."

"When the Grand Rapids Public Schools gave me a letter on December 2, 2014, they just stated "unprofessional conduct" without any details of when, where, what and who. The never gave me any specifics, as to, what was going on."

"I was in the dark until January 5th, 2015, when they finally scheduled an investigatory meeting. At that meeting, when my fiance, her mother (a former teacher) got there, it is when they wrote up charges. The union representative arrive later, but after ten minutes of reviewing the charges, at 4:30 pm when the board finally wrote them up, I decided it be best to take Legal Shield's advice to consult with them for answering 4 frivolous allegations. I also explained that I will follow up with prescribed medical attention because I had gone to Emergency on January 3, 2015. As I left, I look at the Human Resource members and state that I will have an answer in writing and I will be following up with my health."

"On page 73 of Article 13, Letter I. Staff Reprimand, the Grand Rapids Public Schools does not follow any of these procedures, yet on January 5, 2015, GRPS unprepared, with up 4 allegations which are not true."

"I want to file a grievance for inappropriate procedures."

129. After this letter to Mr. Chad Williams, I did not here from Mr. Chad Williams or any one on March 13, 2015 about representation for the March 16, 2015 dismissal hearing. On Monday, March 16, 2015, because I did not here from Mr. Chad Williams or any one else from the union, I decided to call the central office for the Michigan Education Association (MEA), the MEA help desk stated that Mr. Williams move to Lansing office as his local office. The movement was declared to the MEA help desk on the Monday, March 16, 2015, when I called asking for representation. While I was on the phone with MEA, they call the GREA to see what was going on. A few hours before the Monday unjustly Dismissal Hearing, without the performance of contractual obligations, the Union did not represent me, as they never had done so. On many occasions, nothing has been done to answer my letters from the union. Again, I have discovered Mr. Chad Williams supposedly moved to Lansing because I called the MEA help desk, whom found out by calling the GREA office.

130. The GRPS and Mr. Chad Williams, the union representative did not administer the contract, and the union should have informed me about Mr. Chad Williams departure, especially since the Grand Rapids Public Schools was about to dismiss me. Also, Mr Williams was the one assigned to me by GRPS to deal with this matter. Nevertheless, letters were written to him asking for his help, since October 29, 2014. I have proof of his total disregard in representing me and the disregard to my contractual rights.

131. When I could not contact the union on March 16, 2015, (the day of the dismissal hearing) on the phone and via email about receiving representation since Mr. Williams was reported to no longer be around, I wrote a letter to Mr. Paul Helder, and I Cc. the letter to Anderson, Gladys, aisha.lofton@grea.org, Mary Bouwense and Chad Williams.

132. "Ms. Kylie B from the help desk office stated that the Union will call me regarding my dismissal hearing today. She also mentioned that Mr. Chad Williams has been transfer the

Lansing office, indicating that he is no longer my representative. Is the GREA going to represent me at this hearing?"

133. I did get a call from Mr. Paul Helder, but after speaking a bit, he mentioned that he will get a response about whether I will get Union Representation for the dismissal hearing scheduled that evening.

134. Since I did not get a response, I wrote another letter, via email on March 16, 2015, after 5:30 pm, to Mr. Paul Helder, "It's a little after 5:30 Pm. I was wondering about the representation at the board meeting at this dismissal hearing?"

135. I did not see a response on until after the dismissal hearing, and Mr. Paul Helder was at the hearing, but I did not know who he was because I never met him. However, on Monday, March 16, 2015, after the dismissal hearing I look at his email, in which, Mr. Paul Helder responded to my earlier email and writes;

136. "Your refusal to pay your membership dues leaves you without entitlement to representation beyond the contract. While I will see you at tonight's Board of Education meeting, I will not be acting as your representative during the Board's closed session. If however, we find that you contractual rights were violated, we will, of course pursue a grievance over the issue."

137. On an email Mr. Paul Helder states "Your refusal to pay your membership dues leaves you without entitlement to representation.........." He was even present. "While I will see you at tonight's Board of Education meeting," I don't even know who he is. Yet, he blatantly told me that he will not help me. "I will not be acting as your representative during the Board's closed session." Before, I get back to explaining the Union's continuous neglect, I will focus on the violations continuously committed by GRPS, as addressed earlier, in Paragraphs 31 to 35, of when my Personal File was given to Wood TV 8, to Dani Carlson.

138. By not following the guidelines of our binding agreement, in essence, GRPS restrained and interfered me, from exercising its appropriate declarations, again, and again, violating the contract on many occasions. I will continue to demonstrate, how and when.

139. As stated in Paragraphs 31 to 35, Pages 10 and 11, on April 2, 2015, GRPS sends a second personal file, that included incidents that never were documented promptly, nor brought to my attention according to the rules in Paragraph 59, because the incidents did not occur. I addressed this because not only did these allegations neglect GRPS's obligations to follow the Guidelines under the Contract under promptness, but for every allegation, no copy was ever given to me, I could not ask for a union representative because nothing was brought to my attention, and, nor, was I able to sign, because neither allegation was provided when the allegations supposedly happened.

140. However, the 2nd, personal file given to Wood TV 8, to Dani Carlson ignore the binding contractual agreement in many different parts whereby I could find many breaches of the contract against GRPS. However, at this time I will refocus the continuous neglect of the Union, picking up from Paragraph 118 to 137, where I left off, above.

141. Several emails, went back and forth between Mr. Paul Helder and I, and Paul Helder did not help me file a grievance, when I asked in writing, on March 17, 2015, "Therefore, I

respectfully ask, that the union, please file a grievance for lack of following appropriate procedures, according to Article 13, Letter G(1) and 1(2)". Even though I pointed out vital parts of the contract that needed to be addressed, the union neglected their duty, again.

142. On March 26, 2015, Mr. Paul Helder directed me to his supervisor, Ms. Mary H. Halley. "As you latest email seems ......... towards questions of competency, ethical concerns, and the statements of multiple individuals (including the MEA HelpDesk), I am referring you to my immediate Supervisor, MEA Southern Zone Director Mary Halley. She was Chad's supervisor – and is currently mine as well. Her position leaves her better able to answer your concerns." On March 26, 2015, Ms. Mary H. Halley even emailed me indicating, "You may email me if you have future concerns." I did not email her, but she decided to email me.

143. I did email Ms. Mary H. Halley with my concerns, and Ms. Mary H. Halley writes me back on March 30, 2015. "............One question I have first, which makes a huge impact on the law and our representation policy; were you a Member in Good Standing (dues fully paid) at the time of this incident and during the process?"

144. Several emails went back and forth between Ms. Mary Haller and I, and on April 7, 2015 she wrote, "...............I need to be very clear with you that we have researched ..................and have checked your membership status. You are not a member in good standing, therefore, the services that were done on your behalf were in accordance with all policies and state law. The alleged actions taken by the district were .................. beyond our requirement to represent you due to your membership status."

145. Then in another email written on April 14, 2015, and Cc. to Shoudy, Mike, Dziadosz, Gretchen, Mary H. Halley wrote, "If you feel that your questions are unanswered and you are still in need of information, I would suggest that you submit a formal written appeal to our General Counsel, Mr. Mike Shoudy. You may send an electronic appeal....."

146. On May 6, 2015, I wrote to Mr. Mike Shoudy, "Dear Mr. Mike Shoudy, I have not been helped by the union, and the last discussion via email was with Ms. Mary H. Halley."

147. On May 14, 2015, Mr. Mike Shoudy replied and Cc. to Halley, Mary; Iorio, Fil (fiorio@kiflaw.com); and Helder, Paul (PHelder@mea.org), "Mr. Santiago: Given that there is pending litigation, the MEA suggests that you seek counsel to assist you in this matter. At this point, all matters will be addressed through the litigation process."

By this time in May of 2015, I had filed the complaint with the Equal Employment Opportunity Commission (EEOC) against the Grand Rapids Public Schools, and I filed complaints in the Michigan Employment Relations Commissions, against the Grand Rapids Public Schools (GRPS) and the Grand Rapids Education Association (GREA/Union). The EEOC has sent a "Right to Sue" letter in September of 2015, whereby I am filing this complaint in the Federal Court. Under Docket 15-029682 and Docket 15-030221, the Grand Rapids Public Schools and GREA matters continue. However, I feel that I have to bring this matter to The United States District Court of Western Michigan.

As a direct and proximate result of Defendant's violations, I, Andres Santiago, the Plaintiff, have been discriminated; I have been defamed by the media because of the Defendant's actions; my property (The Binding Contract and My Employment) has been taken without Due Process.

**Prayer for Relief**

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendant, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate the laws of the United States and the State and State of Michigan;

B. An injunction and order permanently restraining Defendant from engaging in such unlawful conduct;

C. An order directing Defendant to place Plaintiff in the position he would have occupied but for Defendant's discriminatory and harassing treatment and otherwise unlawful conduct, as well as to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect his employment and personal life;

D. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic harm;

E. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to his professional and personal reputations and loss of career fulfillment;

F. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory harm, including but not limited to, compensation for his mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, emotional distress and physical injuries;

G. An award of damages for [*38] any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

H. An award of punitive damages;

I. An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

J. Such other and further relief as the Court may deem just and proper.

**JURY DEMAND: Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein. Dated: December 16, 2015**

Respectfully Submitted,

Andres Santiago/Pro SE
303 Maplelawn ST. SE
Kentwood, Michigan 49548
773-343-2639